UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANMOHANJIT SINGH,<br><br>  Petitioner,<br><br>  v.<br><br>DAVID STILL, *et al.*,<br><br>  Respondents.<br>_____/ | No. C-06-2458 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 20-21)** |

Petitioner Manmohanjit Singh has filed a petition for a writ of mandamus, asking the Court to compel Respondents to adjudicate two different I-485 applications to adjust to permanent resident status. The first I-485 application is an asylum-based application; the second is a marriage-based application. Currently pending are the parties' cross-motions for summary judgment. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Mr. Singh's motion for summary judgment and **DENIES** Respondents' motion for summary judgment.

## I.   FACTUAL & PROCEDURAL BACKGROUND

As noted above, Mr. Singh has two pending I-485 applications.

Mr. Singh filed the first application on June 9, 1999. *See* Pet. ¶ 17; Tolchin Decl., Ex. D (I-485 application to adjust to permanent resident status). This application was based on Mr. Singh's status as an asylee. Mr. Singh had been granted asylum in the United States by an immigration judge on May 14, 1998. *See* Pet. ¶ 12; Tolchin Decl., Ex. A (order of immigration judge); Barrett Decl. ¶ 7. As of the date of this order, this application has been pending for more than seven years.

Mr. Singh filed the second application on March 31, 2003.[1] *See* Supp. Tolchin Decl. ¶ 2 & Ex. 1. This application was based on Mr. Singh's marriage to his wife, Kamal Preet Kaur. Ms. Kaur had become a U.S. citizen several months earlier, on or about January 7, 2003.[2] *See* Pet. ¶ 18. As of the date of this order, this application has been pending for almost four years.

At the hearing on the motions for summary judgment, Respondents represented that a FBI name check was the primary reason for the delay in processing Mr. Singh's two applications. According to a declaration submitted by Respondents,[3] the security check relating to Mr. Singh's name was initiated on December 3, 2002 (*i.e.*, after the first application was filed but before the second). *See* Barrett Decl. ¶ 7. Approximately three and a half years later, on June 7, 2006, the CIS requested expedited processing of Mr. Singh's name check. *See id.* On August 15, 2006, the FBI processed Mr. Singh's name check. *See id.* The declaration states that, "[a]t the present time, [the United States Citizenship and Immigration Services, part of the Department of Homeland Security,] is assessing the sensitive information contained within the name check response. The information raises issues requiring further inquiry before a decision can be rendered on the applications for adjustment of status." *Id.* ¶ 9.

The declaration does not provide any specifics about the "issues requiring further inquiry." Nor did Respondents provide any additional information on these issues to the Court, via in camera submission or otherwise. At the hearing, however, Respondents represented that one issue requiring further inquiry was an "Interpol hit," indicating that a name matching Mr. Singh's has surfaced in connection with a bombing incident in India in 1991. *See* 3d Tolchin Decl., Ex. A at 5 (asylum application addendum). As discussed below, however, evidence related to this incident was

---

[1] The government claims that Mr. Singh submitted this application on March 13, 2003, *see* Barrett Decl. ¶ 7, but this appears to be an error.

[2] The government claims that Ms. Kaur became a citizen on July 7, 2003, *see* Barrett Decl. ¶ 7, but this appears to be an error since Mr. Singh submitted his second I-485 application on March 31, 2003. *See* Supp. Tolchin Decl. ¶ 2 & Ex. 1.

[3] The declarant is Robin Barrett, the Section Chief in the Adjustment of Status Unit of the San Francisco District office for the U.S. Citizenship and Immigration Services ("CIS").

2

1  presented to the immigration judge who nonetheless granted Mr. Singh asylee status.[4]  The
2  government did not appeal the immigration judge's decision.

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor.  *See id.* at 255.

Where the plaintiff has the ultimate burden of proof, it may prevail on a motion for summary judgment only if it affirmatively demonstrates that there is no genuine dispute as to every essential element of its claim.  *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992).  In contrast, where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Both parties agree that this case can be disposed of on summary judgment.

---

[4] At the hearing on the motions for summary judgment, the Court gave Mr. Singh leave to file evidence showing that the Interpol hit and/or bombing incident was evidence before the immigration judge. Mr. Singh did so.  *See* 3d Tolchin Decl., Exs. A-C. Mr. Singh at that time also asked for leave to submit a post-hearing brief.  *See* Docket No. 26. In light of the discussion below, that request is **DENIED** and the brief is stricken from the record.

In his petition, Mr. Singh argues that he is entitled to mandamus relief pursuant to 28 U.S.C. § 1361 or, at the very least, relief pursuant to 28 U.S.C. § 1331 and the APA.[5] In order to obtain mandamus relief, Mr. Singh must show that "(1) [his] claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997). For relief pursuant to § 1331 and the APA, Mr. Singh must show that Respondents unreasonably delayed in processing his applications. *See* 5 U.S.C. § 555(b) ("[W]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); *see also id.* § 706(1) (providing that courts shall "compel agency action unlawfully withheld or unreasonably delayed").

---

[5] Courts that have considered whether or not to compel adjudication of a pending immigration status application based on alleged unreasonable delay in processing have debated what the proper basis of jurisdiction is. Some courts have indicated that there can be jurisdiction based on the mandamus statute. *See, e.g.*, *Razik v. Perryman*, No. 02 C 5189, 2003 U.S. Dist. LEXIS 13818, at *6-8 (N.D. Ill. Aug. 7, 2003) (rejecting defendants' argument that plaintiffs could not establish mandamus jurisdiction); *Fu v. Reno*, No. 3:99-CV-0981-L, 2000 U.S. Dist. LEXIS 16110, at *13-14 (N.D. Tex. Nov. 1, 2000) (concluding that "petitioners whose applications for adjustment in status are properly before the INS . . . have a right, enforceable through a writ of mandamus, to have the applications processed within a reasonable time"); *Paunescu v. INS*, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999) (concluding that there was mandamus jurisdiction because "[p]laintiffs have a right to have their applications for adjustment of status adjudicated, defendants have a duty to perform this adjudication within a reasonable time, and no other remedy is available to plaintiffs").

Others have held that there is no jurisdiction under the mandamus statute but that there can be jurisdiction based on § 1331 and the APA. *See, e.g.*, *Saleh v. Ridge*, 367 F. Supp. 2d 508, 511-12 (S.D.N.Y. 2005) (concluding that the court lacked subject matter jurisdiction to compel agency action by writ of mandamus but finding that it did have jurisdiction pursuant to § 1331 and the APA since plaintiff's application was pending for at least five years by the time the complaint was filed); *Wang v. Reno*, No. 01 Civ. 1698 (BSJ), 2001 U.S. Dist. LEXIS 15577, at *4 n.1, *5 (S.D.N.Y. Sept. 27, 2001) (indicating that "the Mandamus Act does not confer jurisdiction over the question of how long the INS can wait before receiving an application and scheduling an interview" but acknowledging that "some [c]ourts in this District have found jurisdiction in factually similar cases under the federal question statute *and* the APA if plaintiff alleges that the time elapsed before the interview has been 'unreasonable'").

In this case, Respondents conceded that mandamus relief is possible so long as the requirements are met.

A. <u>Nondiscretionary Duty</u>

At the hearing on the motions for summary judgment, Respondents conceded that they have a mandatory duty to act on Mr. Singh's applications. Regulations support there being such a duty,[6] and the Court finds that this duty to act is not discretionary. As emphasized by one court, there is a difference between the INS's discretion over *how* to resolve an application and the INS's discretion over *whether* it resolves an application. *See Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999).

B. <u>Unreasonable Delay</u>

The critical question for the Court in deciding these motions is whether there has been unreasonable delay by Respondents in processing Mr. Singh's applications. Those courts that have recognized mandamus as a possible remedy have stated that "petitioners whose applications for adjustment in status are properly before the INS . . . have a right, enforceable through a writ of mandamus, to have the applications processed within a reasonable time." *Fu*, 2000 U.S. Dist. LEXIS 16110, at *13-14; *see also Paunescu*, 76 F. Supp. 2d at 901 (concluding that there was mandamus jurisdiction because "[p]laintiffs have a right to have their applications for adjustment of status adjudicated, defendants have a duty to perform this adjudication within a reasonable time, and no other remedy is available to plaintiffs"). Similarly, for relief pursuant to § 1331 and the APA, plaintiffs must show unreasonable delay in the processing of their applications. *See* 5 U.S.C. § 555(b) ("[W]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); *see also id.* § 706(1) (providing that courts shall "compel agency action unlawfully withheld or unreasonably delayed").

---

[6] For example, with respect to the asylum-based application, 8 C.F.R. § 209.2(f) provides that "[t]he applicant shall be notified of the decision, and if the application is denied, of the reasons for denial. . . . If the application is approved, the director shall record the alien's admission for lawful permanent residence as of the date one year before the date of the approval of the application . . . ." 8 C.F.R. § 209.2(f); *see also Aboushaban v. Mueller*, No. C 06-1280 BZ, 2006 U.S. Dist. LEXIS 81076, at *4 (N.D. Cal. Oct. 24, 2006) (Zimmerman, J.) (reading this text "as creating a non-discretionary duty to adjudicate the plaintiff's application").

Similarly, with respect to the marriage-based application, 8 C.F.R. § 245.2(a)(5) provides that "[t]he applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial. . . . If the application is approved, the applicant's permanent residence shall be recorded as of the date of the order approving the adjustment of status." 8 C.F.R. § 245.2(a)(5)

In cases where courts have addressed the specific issue of whether there has been unreasonable delay in processing an immigration status application, courts have typically "look[ed] to the source of the delay -- *e.g.*, the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Saleh*, 367 F. Supp. 2d at 512 (internal quotation marks omitted); *see also Bartolini v. Ashcroft*, 226 F. Supp. 2d 350, 354 (D. Conn. 2002) (noting the same).

In the case at bar, there is no evidence that the delay is attributable to the actions of Mr. Singh. *Compare Wang v. Reno*, No. 01 Civ. 1698 (BSJ), 2001 U.S. Dist. LEXIS 15577, at *6 (S.D.N.Y. Sept. 27, 2001) (noting that the plaintiff was "largely responsible for the delay in her case" by submitting incorrect or incomplete information). Nor is there any evidence indicating that the facts underlying Mr. Singh's applications are especially complex, which might justify a delay. *Compare Bartolini*, 226 F. Supp. 2d at 354-55 (noted that the application was not a simple one because there were circumstances that suggested that there could be fraud; delays were to be expected in order for the agency to conduct an investigation). The main reason for the delay -- as conceded by Respondents at the hearing -- is the security check related to Mr. Singh's name.

At the hearing, Respondents argued that they cannot be blamed for the slowness of the name check because that is the responsibility of the FBI. Respondents' attempt to divorce themselves from the FBI is unavailing. The critical issue is not whether a particular branch of the federal government is responsible for the delay; it is whether the individual petitioner versus the government *qua* government is responsible. *See Paunescu*, 76 F. Supp. 2d at 903 n.2 (rejecting defendants' attempts "to deftly transfer blame and responsibility from one governmental entity to another" as a "shell game"; noting that "[t]he INS, the FBI, and the State Department are all arms of the United States of America, a defendant in the instant case"). Moreover, although Mr. Singh did not name the FBI directly as a defendant in this litigation, he did sue Alberto R. Gonzales in his official capacity as Attorney General of the U.S. Department of Justice, and the FBI is one of the Justice Department agencies. *See also* Pet. ¶ 11 (noting that the Attorney General "has responsibility for providing access to criminal history record information pursuant to 8 U.S.C. §

1105(b), 8 U.S.C. § 1103(g)"). Thus, even if the FBI were largely responsible for the delay as Respondents suggest, its conduct would properly be within the scope of the complaint herein.

Furthermore, aside from the FBI, Respondents were responsible for a substantial portion of the delay. Respondents fail to explain:

(1) Why it took two-and-a-half years for them to initiate a security check with the FBI.. Mr. Singh's first I-485 application was filed in June 1999. The security check was not initiated until December 2002.

(2) Why Respondents failed to take any action to follow up with the FBI until after this lawsuit was filed by Mr. Singh in April 2006. *See* Barrett Decl. ¶ 7 (stating that, in June 2006, the CIS requested expedited processing of Mr. Singh's name check). Respondents concede that they cannot point to any action taken to move the applications forward between 2002 and 2006.

(3) Why it took so long to process Mr. Singh's fingerprints the first time in March 2005 given that his applications were filed, respectively, in June 1999 and March 2003. *See id. Compare Bartolini*, 226 F. Supp. 2d at 354 (concluding that "[t]he INS took steps within a reasonable time to process [the plaintiff's] application" because "[l]ess than two months after receiving [the] application, the INS scheduled a date to take [the plaintiff's] fingerprints"; "[w]ithin six months after receiving [the] application, the INS held an adjustment of status interview with [him and his wife]"; and "[t]wo months after the interview, the INS followed up by requesting that [the plaintiff] forward his birth certificate, which was necessary for the adjudication of his application for adjustment of status").

Thus, Respondents, not Petitioner, bear responsibility for the delay.

In *Yu*, the court suggested six additional factors which may be used to assess the reasonableness of agency delay:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting

> delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Yu*, 36 F. Supp. 2d at 934 (internal quotation marks omitted).  In the instant case, Congress has not imposed a specific timetable for the processing of immigration status applications.  However, as conceded by Respondents, their duty to act is mandatory, and the Court notes that delay in this arena is less tolerable given that human health and welfare are at stake.

As to the effect of expediting delayed action on agency activities of a higher or competing priority, Respondents contend that national security is an overarching concern in completing the name check and that the Court must given them an opportunity to evaluate the sensitive information contained within the name check response.  Undoubtedly, national security must be considered a competing priority of the highest order.  However, the mere invocation of national security is not enough to render agency delay reasonable per se.  In the instant case, Respondents claim that there are issues requiring further inquiry but provide the Court with no further information about these issues.  On the papers, the Court is left with the *ipse dixit* assertions of the government.

At the hearing, Respondents provided some detail about the issues requiring further inquiry, referring the Court to the Interpol hit related to a bombing incident in India in which a name matching Mr. Singh's surfaced.  However, as Mr. Singh pointed out, the immigration judge who decided Mr. Singh's asylum application was aware of this incident and yet still granted asylum.[7]  Indeed, the documents submitted by Mr. Singh in support of his asylum application indicated that this incident was a significant aspect of the asylum proceedings adjudicated by the INS.  *See* Third Tolchin Decl., Exs. A-C.  While national security concerns must be given careful and weighty consideration, where the application is based on a grant of asylum in which the government had an opportunity and presumably did bring out all national security concerns, and those concerns were scrutinized by the immigration law judge, there is a basis for presuming that national security

---

[7] The government chose not to appeal the immigration judge's grant of asylum.

concerns have already been addressed in the asylum proceedings. That certainly appears to be the case here.

Respondents argued at the hearing that new facts may have come to light since the immigration judge's ruling and so their request for additional delay should be afforded deference. However, the government has provided no evidence that, in fact, new information not considered in the asylum proceeding has emerged.

In any event, as Mr. Singh points out, the national security interest claimed by Respondents is questionable given that Mr. Singh has been present in the United States since 1999 but the government has done nothing to challenge his presence over the past seven years. Indeed, Respondents made no real effort to advance the security check on Mr. Singh for years until after this litigation was filed. *See Aboushaban*, 2006 U.S. Dist. LEXIS 81076, at *5-6 (granting mandamus relief to plaintiff whose application had been pending for approximately eight years; noting that "[i]t was only after the filing of this complaint . . . that the government moved on plaintiff's application"). It was not until after Mr. Singh filed suit that the San Francisco office of the CIS asked for expedited processing of Mr. Singh's name check; that Mr. Singh's fingerprints were processed a second time; and that the FBI actually processed Mr. Singh's name check. *See* Barrett Decl. ¶ 7. Nothing in the government's conduct bespeaks any urgent or serious concern with national security.

Finally, it is worth noting that a court order requiring Respondents to rule on Mr. Singh's applications does not leave Respondents without a remedy should facts become known to Respondents that suggest that Mr. Singh is in fact a national security threat. As noted by Mr. Singh, Respondents always have the option of moving to rescind the grant of residency or initiate removal proceedings if that situation truly were to arise.

Accordingly, based on the record and context of the instant proceedings, the effect of expediting this matter upon the agency's "activities of a higher of competing priority" appear to be limited.

As to the nature and extent of interests prejudiced by the delay, Mr. Singh's inability to obtain permanent resident status affects a wide range of important rights, including but not limited to

1  travel and the ability petition to immigrate close family members (a right that is often of special
2  importance to asylees).  *See, e.g.*, *Ngwanyia v. Ashcroft*, 302 F. Supp. 2d 1076, 1079 (D. Minn.
3  2004) (noting that, lawful permanent residents may apply for citizenship after five years, petition to
4  immigrate close family members, and travel abroad freely").  Moreover, Respondents' delay impacts
5  Mr. Singh's ability to seek United States citizenship and all the rights and privileges attendant
6  thereto.  *See* 8 U.S.C. § 1427(a) (providing that a permanent resident may not apply for citizenship
7  until he or she has resided continuously in the United States for five years preceding the date of
8  filing the application); *see also Ngwanyia*, 302 F. Supp. 2d at 1079-80 ("Because
9  lawful-permanent-resident status is a prerequisite for naturalization, any delay in adjustment
10 inevitably postpones an asylee's ability to apply for citizenship.").

11 Thus, the record before the Court indicates that Respondents, and not Mr. Singh, are the
12 source of the delay; that there are no good reasons for the delay he has suffered; that the claimed
13 national security interest warranting further delay is limited, and that the prejudice to Mr. Singh is
14 substantial.

15 Quantitatively, Mr. Singh's asylum-based application has been pending for more than seven
16 years -- even though he was told by the CIS that it would take only four years or so to adjudicate.
17 *See* Pet., Ex. F.  His marriage-based application has been pending for almost four years.
18 Respondents have failed to present any case in which a seven-year delay has been deemed
19 reasonable.  In fact, in a recent opinion, Judge Zimmerman of this District found an eight-year delay
20 unreasonable.[8]  *See Aboushaban*, 2006 U.S. Dist. LEXIS 81076, at *5-6.  Indeed, courts have
21 afforded relief even where the delay has been significantly shorter.  *See, e.g.*, *Razik*, 2003 U.S. Dist.
22 LEXIS 13818, at *5-8 (denying respondents' motion to dismiss the petitioners' case; noting that
23 applications had "languished for two years and yet the INS has done nothing"); *Yu*, 36 F. Supp. at

---

[8] While, in one case, *Saleh*, a court did find a five-year delay reasonable, that case is distinguishable.  *See Saleh*, 367 F. Supp. 2d at 513.  There, the court concluded that a five-year delay was reasonable for an asylum-based application because, at that point in time, Congress had limited to 10,000 the number of asylees whose status could be adjusted to that of lawful permanent resident each year.  *See id.*  After *Saleh*, however, the REAL ID Act of 2005 -- which lifted the 10,000 cap -- became effective.  *See Ngwanyia v. Gonzales*, 376 F. Supp. 2d 923, 929 (D. Minn. 2005) (noting that the REAL ID Act of 2005 lifted the 10,000 cap on asylee adjustments).  Thus, *Saleh* has limited application to Mr. Singh's asylum-based application and no application to his marriage-based application.

935 (denying defendants' motion for judgment on the pleadings; noting that plaintiff's application had been pending for two and a half years); *Paunescu*, 76 F. Supp. 2d at 902-03 (ordering defendants to process plaintiffs' applications; noting that application had been pending for two years, that plaintiffs were "the victims of a bureaucratic nightmare," and that the delay was largely attributable to the government's "misfeasance"); *cf. Galvez v. Howerton*, 503 F. Supp. 35, 39-40 (C.D. Cal. 1980) (finding that the INS engaged in affirmative misconduct in processing petitions for adjustment of status and that therefore defendants were estopped from denying the plaintiffs permanent resident status; noting that one example of affirmative misconduct was a six-month delay by defendants in processing).

Taking into account both qualitative and quantitative aspects of the matter, the Court concludes that the delay in this case, both with respect to the asylum-based and marriage-based applications, was not reasonable.

C.     Other Adequate Remedy

For purposes of mandamus relief (although not relief pursuant to § 1331 and the APA), Mr. Singh must also demonstrate that he has no other adequate remedy available to him. In their papers, Respondents do not argue that Mr. Singh has such a remedy, and the Court is hard pressed to even come up with a plausible theory. For example, "[w]aiting for an agency to act cannot logically be an adequate alternative to an order compelling the agency to act. Neither would it be reasonable to require Plaintiffs to wait to raise their claims until the government initiated removal proceedings." *Fu*, 2000 U.S. Dist. LEXIS 16110, at *15; *see Paunescu*, 76 F. Supp. 2d at 901 (rejecting the defendants' argument that the plaintiffs had an adequate remedy, *i.e.*, to wait until removal proceedings were initiated against them). Accordingly, the Court finds that Mr. Singh has no adequate remedy available to him other than mandamus relief.

///
///
///
///
///

11

### III. CONCLUSION

For the foregoing reasons, the Court concludes that, whether pursuant to mandamus or the APA, Mr. Singh is entitled to the relief he seeks. The Court therefore grants Mr. Singh's motion for summary judgment and denies Respondents' motion. The Court further orders Respondents to complete the adjudication of Mr. Singh's pending I-485 applications forthwith. *See Aboushaban*, 2006 U.S. Dist. LEXIS 81076, at *9 (ordering processing of application "forthwith").

The Clerk of the Court is directed to enter judgment and close the file in this case.

This order disposes of Docket Nos. 20 and 21.

IT IS SO ORDERED.

Dated: January 8, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

12